IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MARILYN L. DILL,                )
                                )
           Plaintiff,           )
                                )
v.                              )  Case No. CIV-08-001-KEW
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social          )
Security Administration,        )
                                )
           Defendant.           )

**OPINION AND ORDER**

Plaintiff Marilyn L. Dill (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further consideration.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 1, 1954 and was 52 years old at the time of the ALJ's decision. Claimant completed a high school education. Claimant previously worked as a bartender, cashier, cook, mobile home painter, and sewing machine operator. Claimant alleges an inability to work beginning June 22, 2005 due to degenerative disk and joint disease of the cervical and lumbar spine with radiculopathy, right carpal tunnel syndrome, insulin

dependent diabetes, hypertension, morbid obesity, depression, and anxiety.

## Procedural History

On October 18, 2004, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application for benefits was denied initially and upon reconsideration. On January 17, 2007, Claimant appeared at a hearing before ALJ Lantz McClain in Tulsa, Oklahoma. On March 28, 2007, the ALJ issued an unfavorable decision, finding Claimant was not disabled during the relevant period. On October 26, 2007, the Appeals Council denied review of the decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that while Claimant suffered from severe impairments, they did not meet a listing and Claimant retained the residual functional capacity to perform her past relevant work as a sewing machine operator.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly evaluate the opinions of Claimant's treating physician;

4

(2) making insufficient and unsupport findings as step two of the sequential evaluation; and (3) failing to properly evaluate Claimant's credibility.

### Treating Physician's Opinion

Claimant first challenges the ALJ's consideration of the opinions of her treating physician, Dr. Emilee Wood. Claimant was diagnosed with cervical spondylosis and protruding disks. As a result, on December 2, 1997, Claimant underwent anterior cervical fusions at levels C4-5 and C5-6 with plate fixation and bone grafting from her left hip. The surgery was performed by Dr. Randall M. Hendricks. (Tr. 246-247).

On March 12, 2003, Claimant was attended by Dr. Wood, complaining of excessive uterine bleeding and slipping and injuring her knee. Claimant weighed 272 pounds with elevated blood pressure. She also reported using Xanax in order to wean herself off of Flexeril. Claimant exhibited tenderness in her left knee. She was diagnosed with dysfunctional uterine bleeding, degenerative joint disease of the back and knee, and acute left knee trauma. (Tr. 187).

On June 30, 2003, Claimant again saw Dr. Wood. She stated she was experiencing back and leg pain. Dr. Wood diagnosed lumbar pain with radiculopathy and prescribed Lortab, anxiety medication, and a muscle relaxant. (Tr. 186). Claimant continued seeing Dr. Wood in July and August of 2003 and January of 2004 with continuing

5

complaints of back pain and high blood pressure. (Tr. 183-185).

On February 2, 2004, Claimant was referred to Dr. Jack Weaver, reporting progressively worsening back pain after slipping on ice some two years before. She described the pain as constant that radiated from her back into her left hip to her mid-thigh on the left. Claimant exhibited lumbar paravertebral and sciatic notch tenderness, especially on the left, with positive straight leg raising, and muscle spasms. Claimant's x-rays indicated moderate lumbar degenerative changes and some disk space narrowing without acute changes. Dr. Weaver diagnosed Claimant with lumbar spondylosis and degenerative disk disease. (Tr. 120-121).

On February 24, 2004, Claimant returned to Dr. Weaver. Her back pain had improved but continued. Claimant exhibited mild lumbar tenderness with normal strength, sensation, and mobility. Dr. Weaver found her lumbar spondylosis and degenerative disk disease had improved somewhat. (Tr. 118). Liver function testing revealed some abnormalities due to prolonged medication use. (Tr. 117).

Claimant began seeing a chiropractor after a motor vehicle accident from Dr. Kevin Bradley. Dr. Bradley found Claimant had obvious cervical pain, unevenness in the upper thoracic and lower cervical spine, cervical tenderness, at least a 50 percent reduction in all planes of cervical mobility, reduced biceps reflexes, and pain. X-rays revealed reduced cervical curvature,

marked osteoarthritis and soft tissue injury, subluxation at two cervical levels, hardware placement, and an osteophyte at the C-2 level. (Tr. 152-156).

Claimant continued seeing Dr. Bradley but returned to Dr. Wood on December 1, 2004 with constant neck and back pain, particularly at C-7 with diagnoses of hypertension, lumbar pain, and anxiety. (Tr. 177).

On February 23, 2005, Claimant again saw Dr. Wood with radicular symptoms in her rights shoulder associated with her cervical pain. Claimant also suffered from respiratory infection and hypertension. (Tr. 176).

On March 12, 2005, Claimant underwent a consultative physical examination by Dr. Jeremy Fullingam. Claimant's chief complaint at that time was low back pain, as well as right shoulder and low neck pain. Dr. Fullingam diagnosed Claimant with chronic low back pain, right shoulder pain with questionable origin from her cervical spine, hypertension, and tobacco abuse. (Tr. 160-161).

On April 4, 2005, a non-examining agency physician, whose signature is illegible in the record, completed a Physical Residual Functional Capacity Assessment form on Claimant. He found Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour day, sit for about 6 hours in an 8 hour day. The physician noted slightly decreased range of motion of neck extension and

7

flexion. (Tr. 165-167).

On May 23, 2005, Claimant returned to Dr. Hendricks for evaluation. He found Claimant was suffering pain after slipping and injuring her back and from a motor vehicle accident. He also noted Claimant's hypertension, morbid obesity, and irregular heart rate. (Tr. 206). Dr. Hendricks found from examining Claimant that she had restriction in cervical motion and some numbness and tingling in the right hand extending down to the ulnar border of the hand, some shoulder pain and tenderness over the long head of the biceps tendon with a bit of crepitus on the shoulder motion. He did not detect any major strength deficits. X-rays of the cervical spine show considerable spondylotic changes both above and below the cervical fusion with large osteophytic spurs developing. Lumbar x-rays were unremarkable. Dr. Hendricks suspected Claimant had some spondylotic changes in the cervical spine producing a right C-8 radiculitis. (Tr. 206-207).

On May 25, 2005, Claimant's MRI revealed mild annular bulging with mild facet arthritic changes at L3-4, L4-5, and L5-S1. (Tr. 205).

On June 6, 2005, Claimant returned to Dr. Hendricks found Claimant's MRI of the cervical area reveled the prior fusion to be intact but also found C6-7 disk to be protruding into the spinal canal. He ordered neck exercises, a cervical traction unit, and a cervical epidural steroid injection. (Tr. 203).

8

On June 22, 2005, Claimant underwent cervical and lumbar epidural steroid injections at C6-7 and L4-5. (Tr. 174-175). On July 25, 2005, Dr. Hendricks saw Claimant, who reported a lack of improvement despite two injections and that her pain was severe enough that she did not believe she could tolerate it without surgery. Dr. Hendricks agreed to perform a diskectomy and fusion at C6-7. (Tr. 202). On August 18, 2005, Claimant underwent an anterior cervical fusion at the C6-7 level with iliac bone grafting and plate fixation with exploration of her previous cervical fusion and solid arthrodesis. (Tr. 196-197).

On September 2, 2005, Claimant again saw Dr. Hendricks. Her neck was doing well, but she experienced incision problems, which required another procedure. (Tr. 190-194). She was eventually released on November 18, 2005. (Tr. 230-231).

On November 14, 2005, Dr. David Bissell completed a Physical Residual Functional Capacity Assessment form on Claimant. He determined Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour day, sit about 6 hours in an 8 hour day. (Tr. 222-229).

On December 12, 2005, Claimant returned to Dr. Wood with back pain, nausea, and vomiting. (Tr. 232). On August 22, 2006, Claimant was examined by Dr. Kenneth Kuykendall for paresthesias in her hands, worse on the right, and chronic back pain. Dr.

Kuykendall diagnosed Claimant with type II diabetes under good control, chronic back pain, hypertension, and probable right carpal tunnel syndrome. (Tr. 250).

On August 25, 2006, Dr. Wood completed a Physical Capacities Evaluation form on Claimant. Dr. Wood found that Claimant could sit for 4 hours out of a 8 hour day, stand and walk for 1 hour out of an 8 hour day, occasionally lift and carry up to 10 pounds, and could not use her hands for simple grasping, pushing, pulling, and fine manipulation. She also concluded that Claimant could not squat, crawl, or reach above shoulder level and could occasionally bend or climb. (Tr. 244). Dr. Wood also found Claimant was mildly restricted in activities involving unprotected heights and exposure to marked changes in humidity and temperature and moderately restricted in exposure to dust, fumes, or gases. Dr. Wood did not believe Claimant's condition would improve. She restricted Claimant to part time sedentary work. (Tr. 245).

In his decision, the ALJ found Claimant retained the residual functional capacity to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for at least 6 hours in an 8 hour day, sit for at least 6 hours in an 8 hour day, and avoid work above shoulder level. (Tr. 23). He concluded Claimant could perform her past relevant work as a sewing machine operator. (Tr. 28).

With regard to the restrictions opined by Dr. Wood, the ALJ

first recognizes Dr. Wood restricted Claimant to part time work. He also states Dr. Wood did not state what she based her restrictions on. The ALJ related the factors to be considered in evaluating whether to give a treating physician's opinion controlling weight. He also recognized that some issues are administrative findings rather than medical findings. He concluded that the opinion "could not be given controlling weight because it is in conflict with Dr. Woods's (sic) own treatment records and inconsistent with the other substantial evidence as noted above . . . ." (Tr. 27-28).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The

11

factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ not only failed to give Dr. Woods' opinion controlling weight, it appears he did not give it any weight at all. He must specifically discuss the weight he affords the treating physician's opinion, even if it is reduced and the reasons for the weight

12

considered. On remand, he shall do so. Additionally, he should re-evaluate his analysis on not giving the opinion controlling weight. The ALJ should evaluate the opinion in light of the treating records of Dr. Hendricks, Dr. Kuykendall, and Dr. Weaver in determining whether the opinion is consistent with the medical record.

**Step Two Analysis**

The medical evidence supports manipulative restrictions on Claimant. On remand, the ALJ shall consider these restrictions in finding Claimant can perform the job of sewing machine operator – a job requiring manipulation.

**Credibility Assessment**

Claimant also challenges the ALJ's credibility evaluation of her testimony. Certainly, it is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage,

effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

Instead of engaging in this credibility analysis based upon observed conduct or testimony, the ALJ chose to draw conclusions from Claimant's behavior with her physicians which affected her credibility determination. In this regard, the ALJ failed to affirmatively link evidence in the record with the findings on credibility that she ultimately made. On remand, the ALJ shall re-evaluate Claimant's credibility based upon evidence present in the record rather than evidence not present in the record and upon observed conduct which may readily bear upon Claimant's credibility.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the

Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

IT IS SO ORDERED this 30th day of March, 2009.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE